UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| DEBORAH HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:07-CV-154-BG |
| | ) | ECF |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

### REPORT AND RECOMMENDATION

Plaintiff Deborah Harris seeks judicial review of a decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB). The United States District Judge reassigned this case to the United States Magistrate Judge for all proceedings. Harris did not consent to the jurisdiction of the United States Magistrate Judge. Pursuant to the order reassigning this case, the undersigned now files this Report and Recommendation. After reviewing the administrative record and the arguments of both parties, this court recommends that the District Court reverse the Commissioner's decision and remand the case for further administrative proceedings.

### I. Statement of the Case

Harris claims she could no longer work beginning January 1, 2004, because of residual effects from a brain aneurysm, vision problems, and depression. (Tr. 69-71, 84.) The medical records establish that Harris suffered a large internal carotid artery aneurysm

and underwent a frontal temporal craniotomy with intracranial clipping of the artery in October 1985. (Tr. 121, 163.) The medical records indicate that she suffered a mild stroke after surgery that resulted in left facial weakness and that she also developed aseptic meningitis, which was treated with steroids. (Tr. 138, 196) She also suffered from hydrocephalus, or an increase in brain fluid, and underwent shunt placement to drain the fluid. *Id*. A little more than one year later she was involved in an automobile accident and suffered a cerebral concussion, facial injuries, and fractures to her jaw. (Tr. 149-50, 157.) She underwent surgery and returned to work thereafter. (Tr. 75, 85, 339.) In 1999 Harris complained of left-sided weakness, headaches, and changes in vision in her right eye. (Tr. 166, 189.) Diagnostic testing showed a persistent area of edema and /or abnormal softness adjacent to the shunt in Harris' right parieto-occipital region (Tr. 184), and a neurologist determined that she suffered an absence of vision in the visual field of her right eye and mild left hemiparesis (Tr. 166, 189-90). A neurosurgeon determined that there was "slowing in visual pathways on the right" of Harris' vision that was consistent with optic neuritis or compression or demyelination of the optic nerve on the right. (Tr. 185.) The neurosurgeon believed the visual disturbances were caused by intermittent compression of the ophthalmic artery. (Tr. 171.) Despite the vision problems Harris' condition caused, it was determined that the risks from surgical intervention were greater than possible benefits. (*See* Tr. 171.)

The medical records indicate that in addition to the residual physical effects from the

aneurysm, Harris suffered an organic brain syndrome which caused irritability, depression, a mild hemiparesis, and an attention deficit problem. (Tr. 200, 245.)

Harris testified that her employer, Goodwill Industries of Lubbock, Inc., terminated her at the end of 2003. (Tr. 340-41.) She claimed she worked as a bookkeeper for the agency and that she was no longer able to complete the tasks of her job due to the problems with her vision. (Tr. 341.) She claimed that she experienced a "black hole" in her vision that had grown larger and that caused numbers to "disappear off the page." (Tr. 340-41.) She also testified that she was chronically depressed because of her vision problems. (Tr. 340.)

The Administrative Law Judge (ALJ) determined that Harris was capable of performing the physical exertional requirements of work at all exertional levels but that she was limited by a moderate concentration deficit and could not perform detailed job duties because of her limited vision and could not perform work that involved contact with the general public. (Tr. 32.) Based on testimony from a vocational expert, the ALJ determined that Harris was not disabled because she was capable of working as a folding machine operator, a bakery line worker, and a dishwasher. (Tr. 33.) The Appeals Council denied review, (Tr. 5-7), and the ALJ's decision became the Commissioner's final decision for purposes of judicial review, *see Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005).

**II.     Discussion**

Harris argues (1) that the ALJ failed to properly assess all her impairments; (2) that

3

the ALJ failed to properly consider an opinion from Arun Patel, M.D., her treating psychiatrist, and opinion from an examining State agency psychologist; and (3) that the ALJ erred in his assessment of her credibility.

Harris' second argument has merit. The ALJ failed to properly consider Dr. Patel's opinion. Because a treating physician is familiar with a claimant's impairments, treatments, and responses, his opinion regarding the nature and severity of a claimant's impairments must be given controlling weight and adopted if it is "well supported by diagnostic techniques and is not inconsistent with other evidence." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citations omitted); *see also* S.S.R. 96-2p ("If a treating source's opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e., it must be adopted."). On the other hand, opinion from the claimant's treating physician is not conclusive; responsibility for determining the claimant's disability status lies with the Commissioner. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). In cases in which the ALJ determines that the treating physician's opinions are not entitled to considerable weight, he must subject them to analysis under the six factors set forth under 20 C.F.R. § 404.1527(d) or show good cause for not giving them considerable weight.[1] *Id.* at 621.

---

[1]

In *Newton*, the ALJ relied upon the opinion of a non-examining medical expert that the claimant was not disabled and gave the opinion of the claimant's treating physician no weight. *Newton*, 209 F.3d at 455-58. The court reversed and remanded, holding that in cases in which there is an absence of reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the claimant's treating physician only if he evaluates the opinion under the criteria set forth in 20 C.F.R. § 404.1527(d). The court reiterated this holding in *Myers*, reversing the Commissioner's denial of benefits because the ALJ failed to consider the factors in § 404.1527(d) before rejecting the opinions

4

Dr. Patel treated Harris for organic mood disorder and associated symptoms from 2003 to the time of the ALJ's decision in 2006. (Tr. 310, 330, 334, 342.) On May 13, 2005, he completed a "Mental Impairment Questionnaire" on which he indicated his opinion that Harris was limited in a number of areas that would affect her ability to complete the mental requirements of sustained work. For example, he indicated that Harris had poor to no ability to remember work-like procedures, maintain attention for a two-hour segment, complete a normal workday and workweek without interruptions from psychological symptoms, or perform at a consistent pace without an unreasonable number of rest periods. (Tr. 314.) Dr. Patel was also of the opinion that Harris suffered from moderate restrictions in activities of daily living; marked difficulties in maintaining social functioning; constant deficiencies in concentration, persistence, and pace; and continual episodes of deterioration or decompensation. (Tr. 316.)

The ALJ stated that he had not "rejected" Dr. Patel's opinions but that he had nonetheless found that they were not entitled to controlling weight. (Tr. 26.) The ALJ, however, gave no weight to Dr. Patel's opinions. *Compare Newton*, 209 F.3d at 455 (ALJ stated that treating physician's opinions were not entitled to "'great weight'" but "in actuality . . . gave *no* weight" to the opinions) (emphasis in the original). In contrast to Dr. Patel's findings, the ALJ determined that Harris suffered only a mild degree of limitation in activities of daily living and in maintaining social functioning; only moderate difficulty in concentration, persistence, and pace; and that she suffered no episodes of decompensation.

---

of the claimant's treating physician. 238 F.3d at 621.

(Tr. 31.) Because the ALJ gave no weight to Dr. Patel's opinions, he was required to consider them under the six factors set forth under 20 C.F.R. § 404.1527(d) or show good cause for not giving them considerable weight. *Myers*, 238 F.3d at 621. The ALJ did neither.[2]

The factors under 20 C.F.R. § 404.1527(d) direct the ALJ to consider: (1) the length of the treating relationship; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) whether the physician provides medical evidence to support his opinion; (5) whether the opinion is consistent with the record as a whole; and (6) the specialization of the treating physician. *Newton*, 209 F.3d at 456 (citing 20 C.F.R.§ 404.1527(d)). The ALJ is "required to consider each of the § 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist." *Newton*, 209 F.3d at 456. The ALJ in this case did not consider each of the factors under § 404.1527(d). In particular, he failed to consider whether Dr. Patel's opinions were consistent with other medical records and opinion. According to § 404.1527(d)(4), "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."

---

[2] The ALJ did not reference the good cause exceptions. However, the good cause exceptions are not applicable in this case. Such analysis is applicable only in cases in which there is opinion from other treating or examining physicians that would contradict the treating physician's opinion. *See Newton*, 209 F.3d at 456 & 458 ("Good cause may permit an ALJ to discount the weight of a treating physician *relative to other experts* where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence") (emphasis added)). In this case, there are no opinions from other treating or examining physicians that would contradict Dr. Patel's opinions.

6

Dr. Patel's opinions are consistent with other opinions in the record. State agency psychologist William E. Hoke, Ph.D., examined Harris on January 10, 2006. (Tr. 291-98.) Although Dr. Hoke determined that Harris' intellectual and academic abilities were "generally intact," diagnostic testing demonstrated that she was experiencing "severe depression" and "profound anxiety." (Tr. 296, 298.) He noted that Harris was likely "to have significant problems in being functionally employable and independent." (Tr. 298.) He assigned her a Global Assessment of Functioning (GAF) of 50 and noted that "[g]iven the severity of the anxiety and her visual deficits at the present time, it is unlikely that she can return to work" *Id*. An individual assigned a GAF score of 50 could be expected to experience serious impairments in social, occupational, or school functioning, such as the inability to keep a job. AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 34 (4th ed. 2000) (DSM-IV). Henry M. Hanna, Ph.D., a non-examining psychologist noted that Harris' mental impairments resulted in "some social limitations" that would limit her ability to relate to others and that might "transiently limit her ability to sustain a work week." (Tr. 265.)

As in *Newton*, this is not a case in which there is first-hand competing evidence that would contradict the opinions of the claimant's treating physician. *See Newton*, 209 F.3d at 458. The ALJ was therefore required to analyze Dr. Patel's opinions under each of the factors set forth under 20 C.F.R. § 404.1527(d). *Myers*, 238 F.3d at 621; *Newton*, 209 F.3d at 458. His failure to do so is reversible error and deprives his decision of substantial evidence. *See id*.

7

In addition, the ALJ appears to have rejected the opinions Dr. Patel provided in the "Mental Impairment Questionnaire" because there were internal inconsistencies in the document. The ALJ noted that Dr. Patel assigned Harris a GAF of 65 and that the physician's assessments regarding Harris' limitations were inconsistent with the GAF score. (Tr. 26.) The GAF Dr. Patel assigned Harris is, in fact, inconsistent with his other opinions as well as the opinions provided by Dr. Hoke. (*See* Tr. 298, 310, 314.) An individual assigned a GAF score of 65 could be expected to exhibit only mild symptoms and only "some difficulty" in social, occupational, or school functioning. AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 34 (4th ed. 2000) (DSM-IV). The ALJ should have contacted Dr. Patel to resolve the conflict. *See Newton*, 209 F.3d at 457 (citing 20 C.F.R. § 404.1512(e)(1)).

The court is charged with determining whether the Commissioner's denial of disability benefits is supported by substantial evidence and whether proper legal standards were used to evaluate the evidence. *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)). The decision in this case was not reached through the correct application of legal standards and is not supported by substantial evidence. The court must set aside findings which are not supported by substantial evidence and must correct errors of law. *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (citation omitted).

### III. <u>Recommendation</u>

Based on the foregoing discussion of the issues, evidence and the law, this court

recommends that the United States District Court reverse the Commissioner's decision and remand this case for further administrative proceedings.

## IV. **Right to Object**

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: March 26, 2008.

_____
NANCY M. KOENIG
United States Magistrate Judge